Case 5:20-cv-00205-OLG   Document 51   Filed 12/08/21   Page 1 of 15

FILED
December 08, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ JU
                     DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ANN MARIE ATTRIDGE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. SA-20-CV-00205-OLG |
| | § | |
| **COLONIAL SAVINGS F.A.,** | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Colonial Savings F.A.'s Motion for Summary Judgment (the "Motion" or "Mot."). *See* Dkt. No. 38. Having reviewed the parties' briefing and the record, the Court finds that the Motion should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff Ann Marie Attridge initially filed this lawsuit against Colonial and Trans Union LLC, but Trans Union has since settled and has been dismissed from the case. *See* Dkt. No. 37. Now that Trans Union has been dismissed, Attridge has two remaining claims against Colonial that allege violations of the Fair Credit Reporting Act. *See* Dkt. No. 14 ¶¶ 36–47. Specifically, Attridge alleges that Colonial both negligently and willfully failed to conduct a reasonable investigation into whether Colonial provided incorrect information to Trans Union, a credit reporting agency, in violation of 15 U.S.C. §§ 1681s-2(b). *Id.* The undisputed evidence presented by the parties shows the following.[1]

---

[1] The parties have each raised objections to some of the evidence submitted in support and in opposition of the Motion. *See* Plaintiff's Response to Motion for Summary Judgment ("Resp."), Dkt. No. 40 at 10–13 (objecting to

Colonial became the lender and servicer for a mortgage Ms. Attridge took out at some point before 2014.  Declaration of Jessica Craig ("Craig Decl.") ¶ 3, Dkt. No. 38-1; Mot. at 1.  Ms. Attridge has never filed for bankruptcy.  *See* Craig Decl. ¶ 4; Dkt. No. 40-2.  In 2014, however, Colonial received incorrect information from a research vendor, LexisNexis, indicating that Attridge had debt discharged in a bankruptcy proceeding.  *Id*.  Around the same time, Colonial investigated the issue and corrected its internal records without reporting the bankruptcy to any credit reporting agency.  *Id.*; *see also* Dkt. No. 38-1 at 10.  Colonial then changed the way it stored information regarding bankruptcy filings, but its previous corrections were not carried over to the new system.  Craig Decl. ¶ 5.  Colonial admits that in August 2015, it began "erroneously reporting to the Credit Reporting Agencies that [Attridge] had filed a Chapter 7 bankruptcy petition."  *Id*.  Thereafter, Attridge again discovered that her credit report indicated that she had filed for bankruptcy.  *See* Mot. at 2–3; Resp. at 3.

Following the re-discovery of the incorrect bankruptcy reporting, Colonial responded to three separate Automated Credit Dispute Verifications ("ACDVs") issued by Trans Union and also independently issued an Automated Universal Data ("AUD") set to Trans Union related to the incorrect bankruptcy reporting.  On April 26, 2019, Trans Union sent Colonial the first ACDV (the "First Dispute").  Craig Decl. ¶ 9; Dkt. No. 40-7.  Between receiving that ACDV and issuing its response, Colonial issued an AUD to Trans Union that made changes to various data codes that Colonial argues were sufficient to inform Trans Union that the bankruptcy reporting was incorrect.  Craig Decl. ¶ 8; Dkt. No. 38-1 at 17–18.  Colonial responded to the First Dispute

---

the testimony of Colonial's expert); Reply in Support of Motion for Summary Judgment ("Reply"), Dkt. No. 42 at 3–5 (objecting to certain portions of Attridge's declaration).  However, the Court largely need not, and therefore does not, rely on the purportedly objectionable evidence in reaching its decision.  Accordingly, except as discussed below, the parties' objections are overruled as moot for the time being.

on May 14, 2019, again making changes to various data codes.  Craig Decl. ¶¶ 10–11; Dkt. No. 38-1 at 20–21; Dkt. No. 40-7.

After Colonial's response, Trans Union continued to report that Attridge had received a bankruptcy discharge, prompting the issuance of another ACDV on May 31, 2019 (the "Second Dispute").  Craig Decl. ¶ 14; Dkt. No. 38-1 at 25–26.  Colonial responded to the Second Dispute on June 14, 2019, changing the same codes and information as the First Dispute.  Craig Decl. ¶ 15; Dkt. No. 38-1 at 25–26.  That apparently still did not fix the issue and on October 10, 2019, Trans Union submitted a third ACDV to Colonial (the "Third Dispute").  Craig Decl. ¶ 16; Dkt. No. 38-1 at 28–29.  Colonial responded on October 10, 2019 and made the same changes as its previous ACDV responses.  *Id.*  The core issue in this case, as discussed in more detail below, is whether Colonial's responses to the ACDVs were reasonable and, if not, whether Colonial's responses were willful violations of the FCRA.

## LEGAL STANDARD

Summary judgment is appropriate if the record—including depositions, documents, electronically stored information, affidavits or declarations, admissions, and interrogatory answers—"shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  To determine whether a genuine issue of material fact exists, a court reviews the facts and inferences to be drawn from the record in the light most favorable to the non-moving party.  *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.,* 336 F.3d 410, 412 (5th Cir. 2003).

At the summary judgment stage, the movant bears the burden of identifying those portions of the record it believes demonstrate the "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir. 2005).  But the movant need

not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may also meet its burden "by pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)). If the movant meets its burden, the non-moving party must present specific facts that show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (internal citations and quotations omitted); *see also Lincoln Gen. Ins. Co.*, 401 F.3d at 349. At the summary judgment stage, the non-movant cannot create a dispute of fact with "conclusory allegations" or "unsubstantiated assertions." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990)).

A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey,* 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "As to materiality, the substantive law will identify which facts are material." *Anderson,* 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**DISCUSSION**

Colonial presents three arguments why Attridge would not be able to prove her claims at trial and is therefore entitled to summary judgment. First, Colonial argues that "Plaintiff's claims that Colonial failed to respond to Trans Union's June 15, 2019 letter fails because Colonial had no such obligation to respond." Mot. at 5. Second, "Colonial timely and reasonably investigated and responded to the notifications it received from Trans Union that Plaintiff had disputed Colonial's credit reporting as to Plaintiff." *Id.* Finally, "Plaintiff has no evidence of damages proximately caused by the complained-of credit reporting." *Id.* Each is addressed in turn.

### I.  Colonial Is Not Entitled to Summary Judgment Based on Attridge's Reference to the June 15, 2019 Trans Union Letter

In each of her enumerated causes of action against Colonial, Attridge alleges that "TransUnion, per its June 15, 2019 letter to Attridge, requested Colonial 1) review relevant information, 2) investigate Attridge's dispute, 3) provide TransUnion a response, and 4) update their records." Dkt. No. 14 ¶¶ 38, 44. Colonial contends that based on these allegations, it is entitled to summary judgment because the June 15, 2019 Trans Union letter was never provided to Colonial. Mot. at 6–9. Colonial would be correct if those allegations alone formed Attridge's claims, but the Court does not review two paragraphs of the Amended Complaint in isolation.

It is true that a furnisher of information's (like Colonial) responsibilities under the FCRA are only triggered when a credit reporting agency (like Trans Union) provides notice of a dispute to information contained in a consumer's credit report to the furnisher. *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) ("Such notice is necessary to trigger the furnisher's duties under Section 1681s-2(b)."). But Attridge's allegations are not limited to two inartful paragraphs. The prior allegations in the amended complaint outline several of the

disputes at issue in the case. *See* Dkt. No. 14 ¶¶ 20–32. Moreover, Colonial chose not to challenge the sufficiency of the Amended Complaint, *see* Dkt. No. 17, but has instead chosen to attack the merits of Attridge's claims. There is ample evidence presented by both parties regarding Attridge's disputes to her credit report of which Colonial received proper notice. *See, e.g.*, Craig Decl. ¶¶ 9–16; Dkt. Nos. 40-7, 40-8, 40-10; Mot. at 9 ("The summary-judgment evidence shows that Colonial received three dispute notifications from Trans Union . . . ."). If necessary, the pleadings can be amended to conform to the evidence. *See* Fed. R. Civ. P. 15(a)–(b). The Court will deny the Motion based on this argument. *Cf. Payne v. Seterus Inc.*, No. 16-0203, 2017 U.S. Dist. LEXIS 118077, at *15 (W.D. La. July 26, 2017) ("The mere fact that Plaintiff's second amended complaint only mentions Experian, as opposed to Equifax, is insufficient to grant Defendant judgment as a matter of law. [Defendant's] obligations as they relate to Plaintiff were triggered upon notice of a dispute from any credit reporting agency.").

## II. Attridge Presents a Genuine Issue of Material Fact Regarding Her Negligence Claim but Not Her Willfulness Claim

Attridge brings her claims against Colonial under 15 U.S.C. § 1681s-2(b), subtitled "Duties of furnishers of information upon notice of dispute," which provides in relevant part:

> After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
> > (i) modify that item of information;
> > (ii) delete that item of information; or
> > (iii) permanently block the reporting of that item of information.

Attridge's First Cause of Action alleges that Colonial negligently failed to comply with these requirements. Her Second Cause of Action alleges that Colonial willfully failed to comply with them.

### A. Negligence

If Attridge proves that Colonial negligently failed to comply with the requirements outlined above, she would be entitled to "any actual damages [she] sustained . . . as a result of the failure" and "the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681o(a); *Hall v. LVNV Funding, L.L.C.*, 738 F. App'x 335, 336 (5th Cir. 2018. Whether Colonial was negligent "is judged according to what a reasonably prudent person would do under the circumstances." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 368 (5th Cir. 2001). Colonial concedes that Attridge never filed for or received a discharge in bankruptcy, and therefore, that the information Colonial furnished to Trans Union was inaccurate. *See* Craig Decl. ¶¶ 4–13. Colonial further concedes that it received the required notice of the First, Second, and Third Disputes. Mot. at 9. But Colonial argues that, as a matter of law, its conduct with respect to reporting Attridge's information was reasonable, and therefore, not a violation of the FCRA. *See* Mot. at 9–11.

Colonial asserts that based on the language of Section 1681s-2(b)(1)(E)—which states that a furnisher should instruct a credit reporting agency to "modify," "delete," or "permanently

block" inaccurate information a furnisher discovers in response to a dispute—the actions it took in response to the Disputes were reasonable. Namely, in response to each Dispute, Colonial changed the data in two sections of the ACDVs, the account history section and the Consumer Information Indicator ("CII"). In response to each Dispute, Colonial changed several of the "account history" sections of Attridge's loan balance from "-" to "0." *See, e.g.*, Craig Decl. ¶¶ 11, 15, 16. Further, in response to each Dispute, Colonial deleted the CII "E" indication. *Id.* Colonial argues that these changes were sufficient to inform Trans Union to stop reporting that Attridge had filed for bankruptcy. Colonial further relies on the putative expert testimony of Mr. Dean Binder to demonstrate that Colonial's conduct was reasonable.[2]

In response, Plaintiff challenges that simply deleting the "E" CII indication was sufficient to inform Trans Union that Attridge had not filed for bankruptcy. To do so, she points to the deposition testimony of Colonial employee Ms. Deanzala "Dee" Johnson and the 2017 Credit Reporting Resource Guide ("CRRG"). *See* Resp. at 3–7. Ms. Johnson was the Colonial employee that submitted Colonial's responses to the First and Second Disputes. *See* Dkt. No. 38-1 at 21, 26. Ms. Johnson testified that, as part of her employment with Colonial, she received a copy of the CRRG, kept it at her desk, and had electronic access to it. Dkt. No. 40-5 at 7:8–8:1.[3] The CRRG states that "**Regardless of the method of reporting, the [CII] indicator will be deleted *only* when another Consumer Information Indicator or a Removal value (Q, S, U) is reported.**" Dkt. No. 38-1 at 103; Dkt. No. 40-6. The CRRG therefore suggests that Colonial's responses to the Disputes were insufficient to correct its reporting.

---

[2] As noted above, Plaintiff has raised objections to Mr. Binder's proposed testimony. It is unclear from the record whether these were timely raised based on the Scheduling Order in this case. As directed below, the parties shall address this issue before trial. Colonial does not argue that, in an FCRA case, Attridge must counter Mr. Binder with her own expert. Because the Court finds that Attridge raises a genuine dispute as to Colonial's negligence, the Court will reserve its determination on whether, and to what extent, Mr. Binder may testify at trial.

[3] Viewing the evidence in the light most favorable to Attridge, it appears that the Colonial employee responsible for submitting the response to the Third Dispute, Stephanie Walker (*see* Dkt. No. 38-1 at 29) would also have had access to the CRRG.

In reply Colonial asserts that the CRRG is merely a "guide," deviations from which "are not necessarily violations of the FCRA." Reply at 6. In apparent hedge, however, Colonial's declarant stated that "To the extent that Colonial should have changed the "E" CII code with a "Q" CII code, Colonial's acts were not the result of malfeasance but at best a bona fide error." Craig Decl. ¶ 20.

The Fifth Circuit has instructed that in "the majority of cases, reasonableness is a question for the jury." *Cousin*, 246 F.3d at 368. The Court is further guided by the Fifth Circuit's analogous, but non-precedential, decision in *Jett v. American Home Mortgage Servicing, Inc.* 614 Fed. App'x. 711 (5th Cir. 2015). There, the Fifth Circuit reversed the grant of summary judgment in favor of a furnisher under the FCRA on facts strikingly similar to those present here. *See id.* at 712 ("Although American Home attempted to report the loan as current . . . Jett's credit report was not updated despite that four ACDV forms were exchanged over two-and-one-half years."). The defendant in *Jett* similarly attempted to change Jett's CII code by deleting it, rather than using a "Q" code. *Id.* Because Colonial's employee was provided with the CRRG—which Colonial concedes is a "guide" for the industry—the Court is convinced that Attridge has raised a genuine issue of material fact related to Colonial's reasonableness in responding to the Disputes, which must be decided by the jury. The Motion will be denied as to Attridge's First Cause of Action based on this argument.

### B. Willfulness

Attridge's Second Cause of Action alleges that Colonial willfully violated its responsibilities under the FCRA. Dkt. No. 14 ¶¶ 42–47. If Attridge could prove that Colonial willfully failed to comply with those requirements, she would be entitled to "actual or statutory damages, and punitive damages as well as attorney's fees." *Hall*, 738 F. App'x at 336;

9

15 U.S.C. § 1681n(a). Colonial maintains that "[a]t the very least, Colonial's timely investigations and communications with Trans Union show that there was no willful violation of the FCRA." Mot. at 11. The Court agrees with Colonial.

"Malice or evil motive need not be established for a punitive damages award, but the violation must have been willful." *Cousin*, 246 F.3d at 372 (quoting *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir. 1983)). "For the violation to be 'willful,' thereby justifying an award of punitive damages under the Fair Credit Reporting Act, a defendant's course of conduct must exhibit a 'conscious disregard' for or entail 'deliberate and purposeful' actions taken against a plaintiff's rights." *Sapia v. Regency Motors of Metairie, Inc.*, 276 F.3d 747, 753 (5th Cir. 2002) (quoting *Cousin*, 246 F.3d at 372) (affirming summary judgment rejecting punitive damages). Further, "courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments." *Cousin*, 246 F.3d at 372.

In her opposition, Attridge merely makes conclusory assertions, such as "Colonial acted with conscious disregard to Attridge," and that Colonial employees "continued to cling to an approach [(not following the CRRG)] they knew would not reflect accurate reporting." Resp. at 14, 15. But Attridge points to no evidence that Colonial or its employees "knew" their efforts to correct the incorrect bankruptcy reporting would be insufficient. Indeed, on at least four separate occasions—three in response to notifications from Trans Union and one of Colonial's own volition—Colonial attempted to correct its reporting in the same manner. *See supra* Background. Moreover, Attridge points to no evidence indicating Colonial engaged in willful misrepresentations, concealments, or acted with a conscious disregard for Attridge's FCRA rights. It appears from the record that, after its rediscovery of the false bankruptcy reporting,

10

Colonial was forthright about its mistake at every opportunity. *Id.*; *see generally* Craig Decl. "While it is not clear as a matter of law that [Colonial's] conduct was reasonable," Attridge has "not adduced evidence that [Colonial] knowingly and intentionally committed an act in conscious disregard for the rights of others." *Anderson v. Wells Fargo Bank, N.A.*, C.A. No. 3:16-CV-2514-N, 2018 U.S. Dist. LEXIS 117540, at *22–23 (N.D. Tex. July 13, 2018) (internal quotation marks omitted). Accordingly, the Court finds that Colonial is entitled to judgment as a matter of law and will therefore grant summary judgment on Attridge's Second Cause of Action.

### III. Attridge Presents a Genuine Issue of Material Fact Regarding Her Actual Damages

As noted above, if Attridge proves that Colonial negligently failed to comply with the requirements outlined above, she will be entitled to "any actual damages [she] sustained . . . as a result of the failure" and "the costs of the action together with reasonable attorney's fees as determined by the court. 15 U.S.C. § 1681o; *Hall*, 738 F. App'x at 336. Colonial contends that Attridge cannot prove her damages and it is therefore entitled to summary judgment.

#### A. Mental Distress

In her opposition, Attridge points to evidence of the mental anguish and emotion distress she claims to have suffered at a result of Colonial's conduct. *See* Resp. at 16. "The FCRA permits 'recovery for humiliation and mental distress and for injury to one's reputation and creditworthiness.'" *Bacharach v. Suntrust Mortg.*, 827 F.3d 432, 435–36 (5th Cir. 2016) (quoting *Sapia*, 276 F.3d at 753). "However, a claim related to emotional distress requires a 'degree of specificity' and 'must be supported by evidence of genuine injury,' such as 'the observations of others,' 'corroborating testimony,' or 'medical or psychological evidence.'" *Id.* at 436 (quoting *Cousin*, 246 F.3d at 371). Colonial again largely seems to challenge the sufficiency of Attridge's complaint with respect to these damages. *See* Mot. at 12. However, to

the extent Colonial challenges the merits of Attridge's damages claims, summary judgment must be denied.

Attridge provided a declaration to support her claims for emotional distress, among other things. *See* Dkt. No. 40-1 ("Attridge Decl."). There, Attridge claims that she "bec[ame] physically ill with an upset stomach, headaches, insomnia, [and] racing heart . . . ." Attridge Decl. ¶ 18. Further, she "could not concentrate on anything else" because she was "full of anxiety and extremely irritable while waiting to hear back from" a potential employer who conducted a credit check during her application process. *Id.* She further claims she suffered "brain fog, fatigue, slow metabolism, [inability] to concentrate, headaches, [and] inflammation causing aches and pains through [her] body." *Id.* ¶ 19. She further declared that Colonial's conduct "pushed [her] into a severe depression." *Id.*[4]

Attridge further points to the testimony of three family members, albeit very generally, to support her claims. *See* Resp. at 16. Ms. Mary Lou Kubena testified that Attridge was "tired," was "gaining weight," and was "extremely emotional." Dkt. No. 40-15 at 21:18–22:1. Ms. Kubena further testified that the "credit reporting issues" had "affected" Attridge's "routines" and "interfered with her lifestyle." *Id.* at 34:13–18. Mr. Michael Attridge testified that because of the misreporting, Attridge was "extremely embarrassed" and was "overtaken by" the process of dealing with the misreporting. Dkt. No. 40-16 at 14:13–16:16. Finally, Mr. Ian Wilson

---

[4] Colonial objects to these portions of Paragraph 19 on the ground that Attridge's statements "are based only on her subjective feelings." Reply at 4 (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)). Colonial further objects "to the extent" Paragraph 19 contains "inadmissible hearsay." Colonial's reliance on *Douglass* is misplaced. There, the Fifth Circuit held that "an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion in the face of proof showing an adequate nondiscriminatory reason." *Douglass*, 79 F. 3d at 1430. Moreover, whether the Attridge declaration itself constitutes hearsay is immaterial. Rule 56 only requires that Attridge point to evidence that "would be admissible" at trial. Fed. R. Civ. P. 56(c)(2). Colonial's objections are therefore overruled. The Court does not believe that Colonial's "medical expert" objection is applicable to the quoted portions of the Attridge declaration; however, the appropriate scope of Ms. Attridge's testimony related to her damages will be determined at trial.

testified that after the mistaken credit reporting, he noticed a "marked change" in Ms. Attridge. Dkt. No. 40-17 at 41:10–24.

In reply, Colonial does address this deposition testimony, let alone attempt to refute it. *See* Reply at 7–8. It merely states that Attridge "comes nowhere close to meeting" the standard for mental anguish damages under the FCRA. *Id.* at 8. At this stage, the Court disagrees and finds that Attridge as presented sufficient corroborating evidence of her mental distress to present a genuine issue of material fact to be presented to the jury. *See Bacharach*, 827 F.3d at 436; *accord Anderson*, 2018 U.S. Dist. LEXIS 117540, at *20 (finding spouses' testimony of their own emotional distress sufficiently specific to create a fact issue precluding summary judgment).

## B. Out-of-Pocket Costs

Attridge further claims that, in attempting to correct her credit report, she spent forty hours, which she values at $31 per hour. Attridge Decl. ¶ 20. She further claims that she spent $200 on office supplies, postage, and "other materials in preparing" the credit report disputes. *Id.* In reply, Colonial again attempts to attack the sufficiency of the Amended Complaint. Resp. at 16 ("Plaintiff in her Amended Complaint does not plead these damages and therefore she may not seek them now."). Colonial is both incorrect and too late. General damages need not be pleaded with specificity. *Compare* Fed. R. Civ. P. 8(a)(3) *with* Fed. R. Civ. P. 9(g). The Amended Complaint alleges that "plaintiff suffered and continues to suffer damages, *including* damages to her reputation, stress, fear worry, distress, frustration, humiliation, and embarrassment." Dkt. No. 14 ¶ 40 (emphasis added). Attridge's allegations related Colonial's potential negligence were sufficient to put Colonial on notice of the potential damages arising from Section 1681o. Colonial chose not to challenge the sufficiency of those allegations. It also

apparently chose not to depose Ms. Attridge, where Colonial could have inquired into the scope of Attridge's damages, before moving for summary judgment. As noted above, to the extent necessary, the pleadings may be amended to conform to the evidence. *See* Fed. R. Civ. P. 15(a)–(b).

Further, Colonial points to no controlling authority indicating that these out-of-pocket expenses are precluded by Section 1681o. Colonial relies on *Casella v. Equifax Credit Information Services*. 56 F.3d 469, 474 (2d Cir. 1995). But there the Second Circuit held that expenses incurred *before* a credit reporting agency had any duty to act under the FCRA were not "actual damages" because those expenses were not incurred to "force [the defendants'] compliance with any specific provision of the statute." *Id*. Considering Attridge's several attempts to correct the mistaken bankruptcy reporting, at least some portion of Attridge's out-of-pocket expenses necessarily occurred after Colonial's duties under the FCRA were triggered. Moreover, at least one other court within this circuit has determined that out-of-pocket expenses could proceed through summary judgment. *See Anderson*, 2018 U.S. Dist. LEXIS at *20. The Court agrees and finds that Attridge presents sufficient evidence of the out-of-pocket costs she accrued to preclude summary judgement.

Finally, in a passing sentence, Colonial argues that Attridge has not shown that her costs stem from Colonial's, rather than Trans Union's, conduct. Reply at 8. But the Court has already determined that Attridge has presented sufficient evidence to reach the jury on Colonial's potential negligence. *See supra* § II.A. If the jury finds that Colonial was negligent, it will also be tasked with determining whether Colonial's negligence caused Attridge's damages. The Motion will be denied as to Attridge's actual damages under her First Cause of Action.[5]

---

[5] Because the Court is dismissing the Second Cause of Action, it declines to address whether Attridge raises a genuine issue of material fact regarding punitive damages.

## CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment, Dkt. No. 38, is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's Second Cause of Action is **DISMISSED WITH PREJUDICE**.  Plaintiff's First Cause of Action will proceed to trial.

As it does not appear from the record that the parties have done so, it is **FURTHER ORDERED** that the parties shall mediate this case within **thirty days** of the entry of this Order, unless the parties seek an order from the Court excusing them from mediation.  If mediation is unsuccessful, the parties shall promptly advise the Court so this matter may be reset for trial.

It is **FURTHER ORDERED** that, if mediation is unsuccessful, the parties shall state their positions on whether Plaintiff's objections to Defendant's expert were timely pursuant to the Scheduling Order (Dkt. No. 12 ¶ 5) and its amendments.  These positions shall be filed with the other pretrial materials required by Local Court Rule CV-16(f).  Plaintiff may supplement or amend her already-filed pretrial submissions, if necessary, at that time.  Accordingly, Plaintiff's Motion in Limine (Dkt. No. 47) is **DENIED AS MOOT** for the time being.

It is so **ORDERED.**

**SIGNED** this __8th__ day of December, 2021.

ORLANDO L. GARCIA
Chief United States District Judge