**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ANN MARIE ATTRIDGE,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:20-cv-00205-OLG** |
| | § | |
| **COLONIAL SAVINGS, F.A. and** | § | |
| **TRANSUNION, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MOTION TO DISMISS FOR LACK OF STANDING AND BRIEF IN SUPPORT**</u>

Defendant Colonial Savings, F.A. ("Colonial" or "Defendant"), pursuant to Federal Rule of Civil Procedure 12(h)(3), files this its Motion to Dismiss for Lack of Standing and Brief in Support and respectfully shows as follows:

## I.    SUMMARY

Plaintiff Ann Marie Attridge ("Plaintiff") is a former borrower of Colonial's on a mortgage loan.  According to Plaintiff, Colonial wrongfully reported to Defendant TransUnion, LLC ("TransUnion"), a Credit Reporting Agency ("CRA"), that Plaintiff had filed a Chapter 7 bankruptcy petition. For this alleged wrong, Plaintiff has brought claims against Colonial for violations of the Fair Credit Reporting Act ("FCRA")

In response to Colonial's Motion for Summary Judgment, the Court dismiss Plaintiff's claims for intentional violations of the FCRA, but determined that a fact issue remains on Plaintiff's claims for negligent violations of the FCRA.

Plaintiff, however, fails to plead an injury sufficient to provide her with Constitutional standing.  Therefore, her suit should be dismissed for lack of standing.

## II. BACKGROUND

In 2014, Colonial was wrongly informed by a vendor (LexisNexis) that Plaintiff had received a Discharge in a Chapter 7 bankruptcy case. *Exhibit A*. Upon receiving this information, Colonial performed its own research to determine whether or not Plaintiff had received a Chapter 7 Discharge. *Id.* Its research showed that Plaintiff had never filed a bankruptcy case. *Id.* Accordingly, while Colonial's own internal records (due to its receipt of an erroneous reporting by LexisNexis) briefly indicated that Plaintiff had filed a bankruptcy petition, Colonial at that time did not issue a credit report. *Id.* Subsequently, however, when Colonial changed the system by which it tracks bankruptcy filings, the research it had previously conducted showing that Plaintiff had not filed for bankruptcy was missing from Plaintiff's file. *Id.* Accordingly, the new system in August 2015 began erroneously reporting to the Credit Reporting Agencies that Plaintiff had filed a Chapter 7 bankruptcy petition. *Id.*

Specifically, the manner by which this reporting occurred was through the issuance of a Consumer Information Indicator ("CII") by Colonial to TransUnion, along with the other credit reporting agencies ("CRA"). *Id.* The Code that Colonial issued was an "E", which according to the Metro 2 credit-reporting manual, means that the subject debtor had received a Chapter 7 discharge. *Id.*

In 2019 Plaintiff applied for employed with Pentagon Federal Credit Union ("Penfed"). As part of its review of Plaintiff's employment application, it contracted with HireRight, LLC ("HireRight") to perform a background check of Plaintiff, including checking her credit report. HireRight, in checking Plaintiff's credit report, discovered that Colonial had reported that Plaintiff had received a Chapter 7 discharge. HireRight informed Plaintiff of this credit reporting. *See ECF No. 14, Plaintiff's First Amended Complaint, Exh. D.* Plaintiff alleges that

she complained to HireRight to state that this bankruptcy reporting was an error.   *See ECF No. 14, Plaintiff's First Amended Complaint, p.4, ¶21.*

Plaintiff, on April 23, 2021, also submitted an on-line dispute to Colonial about this credit reporting and demanded an immediate correction.   Exhibit A-2.   On this same day, Plaintiff sent an email to Colonial, making this same demand.  Exhibit A-3.

On April 26, 2019, TransUnion submitted to Colonial an Automated Credit Dispute Verification ("ACDV") and identified therein Plaintiff's dispute about the erroneous bankruptcy reporting.   Exhibit A-4. CRA's use ACDV's to inform credit furnishers about disputes that consumers have made regarding credit reporting.   Credit furnishers, upon receipt of an ACDV research the dispute and then return the ACDV to the applicable CRA with its response.   Exhibit A.

Colonial, in response to this ACDV, investigated Plaintiff's dispute and determined that Plaintiff was correct—she had not received a Chapter 7 discharge as she had not ever filed for bankruptcy.  Exhibit A, A-4.  On May 14, 2019, Colonial responded to the ACDV.  *Id.*  Colonial stopped reporting that Plaintiff had received a Chapter 7 Discharge.  Exhibit A.

On April 29, 2019, Colonial issued an Automated Universal Data ("AUD") to TransUnion.   Exhibit A, A-4.   An AUD is the means by which a credit furnisher, such as Colonial, can inform a CRA, like TransUnion, to correct prior credit reporting from that furnisher.  Exhibit A.  In this AUD, for the account history, Colonial changed the reporting for each of the months indicated from "-" to "0".  The "-" meant that no payment was due, which would be the case if the debt had been discharged in a Chapter 7 bankruptcy.  The "0" meant that Plaintiff had made a timely payment each month.

In this AUD, Colonial also change the CII Code from "E" to blank". The "E" means that the subject debtor had received a Chapter 7 discharge. The reporting of a blank in this section means that there should be no CII code reported. Exhibit B. The AUD also changed the balance owed on the debt to $111,086. Exhibit A-4.

April 30, 2019, Colonial issued its response to TransUnion's April 26, 2019 ACDV. DAMA 189. In this ACDV response, Colonial changed the "-" for the months of payments to "0" and it changed the CII Code from "E" to blank. It also changed the balance owed from nothing to $110,846. Exhibit A-5.

On May 1, 2019 Colonial responded to Plaintiff's communications to it from April 23, 2019. In this response, Colonial stated that TransUnion's reporting of the Chapter 7 discharge order was inadvertent and that Colonial would issue corrective credit reporting so that the discharge order would no longer be reported. Exhibit A, A-6.

Despite Colonial's issuance of the April 29, 2019 AUD and the April 30, 2019 ACDV TransUnion allegedly continued to report an "E" CII Code. TransUnion erroneously determined that Colonial had confirmed that the reporting of the "E" CII Code was correct. *See ECF No. 14, Plaintiff's First Amended Complaint, Exh. E.*. TransUnion on June 15, 2019 issued a letter to Plaintiff stating such. *Id.*

TransUnion submitted another ACDV to Colonial on May 31, 2019. Exhibit A, A-7. Colonial responded to this ACDV on June 14, 2019, again changing the "-" for each monthly payment to "0" and changing the CII Code from "E" to blank. *Id.* Colonial also changed the balance owed from nothing to $110,605. *Id.* On June 15, 2019, TransUnion wrote to Plaintiff falsely stating that Colonial had verified that the prior credit reporting was correct. *See ECF No. 14, Plaintiff's First Amended Complaint, Exh. E.*

TransUnion apparently continued to report the bankruptcy through the CII Code "E". Plaintiff allegedly again submitted a dispute to TransUnion. On October 10, 2019, TransUnion submitted another ACDV to Colonial, and Colonial responded on October 15, 2019. In this ACDV response, Colonial, like before, changed the "-" for the months of payments to "0" and it changed the CII Code from "E" to blank. *Id.* On October 16, 2019, Colonial also changed the balance owed on the loan from nothing to $108,547.

Regardless, even though TransUnion allegedly did not remove the "E" CII Code, Plaintiff suffered no damages. Plaintiff in her First Amended Complaint alleges:

> As a result of Colonial's violations of the FCRA, Plaintiff suffered and continues to suffer damages, including damage to her reputation, stress, fear, worry, distress, frustration, humiliation, and embarrassment.
>
> *Plaintiff's First Amended Complaint, p.7, ¶40.*

In response to Colonial's Motion for Summary Judgment, wherein Colonial alleged *inter alia*, that Plaintiff suffered no damages, Plaintiff acknowledged that she suffered no financial injury. She was not denied any credit applications, and she was received the job offer that she was seeking. She makes no allegation that her credit score was reduced. All she complains about is mental anguish damages due to her alleged embarrassment and concern about the credit reporting and the time she spent pursuing her complaints about Colonial. Under the United States Supreme Court's authority in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), these allegations are insufficient for her to have Article III standing to bring her claims in this suit.

## III.    STANDARD

Article III of the United States Constitution limits the jurisdiction of federal courts to deciding only actual "cases" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The doctrine of standing sets apart those "cases" and

"controversies" that are of the justiciable sort referenced in Article III. *Id*. at 560. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). "To establish injury in fact, a plaintiff must show that he . . . suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (quoting *Lujan*, 504 U.S. at 560). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id*. (internal quotation marks omitted). For an injury to be concrete, the Supreme Court has "emphasized repeatedly" that it "must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990) (internal quotation marks and citation omitted).

## IV. ARGUMENT AND AUTHORITIES

The injury-in-fact requirement for standing "asks whether the plaintiff has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151-52 (7th Cir. 2020). A concrete injury "must actually exist" and must be "real and not abstract." *Spokeo, Inc*., 578 U.S. at 340.

In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." 578 U.S. at 341.  The United States Supreme Court has held that a breach of the FCRA does not, by itself, cause an injury in fact.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).  The Fifth Circuit recently followed *Ramirez* to apply this same reasoning in an FDCPA case, namely, that a claim for violations of the statute, by itself, is not sufficient to have standing to sue.  *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823 (5th Cir. 2022).

The Fifth Circuit in *Perez* considered a very similar complaint for damages as what Plaintiff brings in the instant case.  In *Perez*, the plaintiff complained that a law firm violated the FDCPA by sending him a demand letter on a debt the recovery on which was barred by the statute of limitations.  To demonstrate standing, the plaintiff in *Perez* made several arguments.  First, she contended that she suffered mental anguish due to a risk of financial harm by being pressured to pay a debt she was no longer legally required to pay.  *Id.* at 824.  The Fifth Circuit disagreed, holding that, unless this risk materialized, then there was no harm.  *Id.*  Similarly, in the instant case, Plaintiff cannot state a claim for harm because she feared that the alleged improper credit reporting might affect her in the future.  There is no allegation by Plaintiff that it ever did.  Therefore, under *Perez*, Plaintiff's speculative concern about a possible negative consequence does not give her standing.

In *Perez*, the plaintiff also alleged that she had standing because she was "confused" about the demand letter.  *Id.* at 825.  But as the Fifth Circuit held in *Perez*, mere confusion is not enough to provide Article III standing.  The plaintiff in *Perez* analogized to a fraud claim to contend that the defendant's alleged misconduct should be actionable for misrepresenting to her the nature of a debt.  The Fifth Circuit rejected this theory, holding that the standing in a fraud

claim comes from the plaintiff's suffering an actual loss.  As the plaintiff in *Perez* did not pay anything in response to the letter, she suffered no harm.  Here, Plaintiff, for all of her allegations of a concern about what might happen, suffered no harm and thus has no injury.  *See Pennell v. Glob. Tr. Mgmt., LLC,* 990 F.3d 1041, 1045 (7th Cir. 2021) (holding that "stress and confusion," "frustration," and worry were insufficient for standing under FDCPA); *Wadsworth v. Kross, Lieberman & Stone, Inc*., 12 F.4th 665, 668 (7th Cir. 2021) (feeling of stress, annoyance, and intimidation are not enough to establish standing for an FDCPA claim).

Allegations of "great stress, mental anguish, anxiety, and distress" are insufficient to establish standing under *Ramirez*.  *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021).  This is especially so when the allegations of mental anguish are "incommensurate" with the alleged misconduct alleged in the suit.  *Id.*  Here, Plaintiff's claims of extreme mental anguish, when she has suffered no financial injury, are disproportionate to alleged misconduct of Colonial.

The plaintiff in *Perez* further argued that she suffered a loss because of all of the time she had to spend in consulting with a lawyer as a result of the alleged violation of the FDCPA.  The Fifth Circuit, while not completely rejecting this argument, cited with approval to a decision by the Seventh Circuit, which held that the time lost to consult with a lawyer does not provide standing to sue.  *Id. (citing Brunett v. Convergent Outsourcing, Inc.,* 982 F.3d 1067, 1069 (7th Cir. 2020)).  But even if one were to consider pre-*Ramirez* and *Spokeo* cases, Plaintiff's complaints about out-of-pocket expenses and lost time do not provide her with standing.  For expenses to provide standing, the United States Supreme Court has held that nominal expenses, by themselves, do not provide standing.  *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) *Reimer v. LexisNexis Risk Sols., Inc*., No. 3:22-cv-153-DJN, 2022 U.S. Dist. LEXIS 165824,

2022 WL 4227231, at *8 (E.D. Va. Sept. 13, 2022)[1].   The plaintiff must still establish a particularized injury to have standing to bring a claim.   Here, the only particularized injury is Plaintiff's alleged mental anguish which, as shown above, is insufficient to provide this Court with Constitutional standing.

An allegation of lost time can provide standing if the claim is that the time spent actually took away from other income-generating opportunities.   *See Milisavljevic v. Midland Credit Mgmt., LLC*, 581 F. Supp. 3d 1020, 1027 (N.D. Ill. 2022) (finding that a plaintiff's general allegation of economic harm was insufficient for Article III standing because plaintiff does not allege that he expended time that would have otherwise gone to gainful employment).   But the loss of time, in and of itself, is not recoverable under the FCRA.   *Slyzko v. Equifax Info. Servs. LLC*, No. 2:19-cv-00176-JAD-EJY, 2020 U.S. Dist. LEXIS 52265 *28, 2020 WL 1433518 (D. Nev. Mar. 23, 2020) (holding that FCRA does not permit recovery for mere time spent addressing alleged incorrect credit reporting).

Finally, in *Perez* Plaintiff alleged that her privacy interests were affected by the sending of that letter.   *Id.* at 826.   The Fifth Circuit disagreed.   It determined that the FDCPA was meant to provide a remedy for consumers who were the subject of abusive debt collection practices. The one demand latter at issue in *Perez*, held the Court, did not rise to the level of harassing behavior.   Here, Plaintiff complains about a credit report that went out in 2019 and her requests for that reporting to change.   She was not a victim of harassing or abusive conduct, and as shown above, she suffered no financial injury.   There is nothing alleged by Plaintiff in this case that would be akin to the "economic harm that consumers suffer[] due to aggressive and unfair attempts to collect their debts", for which the FDCPA allows for a recovery.   Plaintiff here is

---

[1] *Luken v. Lynaugh*, No. 95-20156, 1996 U.S. App. LEXIS 42731 (5th Cir. 1996) (award of $200 deemed nominal damages).

complaining about one credit reporting.  That is not enough to state a cognizable injury to have standing to bring a claim under the FCRA.  Again, as the Supreme Court said in *Ramirez,* "the mere existence of inaccurate information in a database is insufficient to confer Article III standing." *TransUnion,* 141 S. Ct. at 2209.

Plaintiff lacks standing to bring her FCRA claims because she has not suffered an injury as required by Article III of the United States Constitution; accordingly, her claims should be dismissed.

WHEREFORE, PREMISES CONSIDERED, Colonial asks that its Motion to Dismiss be granted and that Plaintiff's claims be dismissed for want of jurisdiction.  Colonial requests all other relief to which it may be entitled.

Respectfully submitted,

By: */s/ Mark D. Cronenwett*

**MARK D. CRONENWETT**
Attorney in Charge
Texas Bar No. 00787303
mcronenwett@mwzmlaw.com

**MACKIE WOLF ZIENTZ & MANN, PC**
14160 N. Dallas Parkway, Suite 900
Dallas, Texas 75254
(214) 635-2650
(214) 635-2686 (Fax)

**ATTORNEYS FOR DEFENDANT**
**COLONIAL SAVINGS, FA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2023, a true and correct copy of the foregoing was served via ECF notification on the following counsel of record:

William M. Clanton
Law Office of Bill Clanton, PC
926 Chulie Drive
San Antonio, TX 78216
210-226-0800
210-338-8660 FAX
bill@clantonlawoffice.com

*/s/ Mark D. Cronenwett*
**MARK D. CRONENWETT**