IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Ann Marie Attridge | § § § | |
| *Plaintiff*, | § § | Civil Action No.: |
| v | § § | SA:20-cv-00205-OLG |
| Colonial Savings F.A., TransUnion, LLC | § § § | |
| *Defendants*. | § | |

Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Standing

_____

Following recent Supreme Court cases, standing is the argument *du jour* for defendants in consumer law cases. Here, Colonial published false information concerning Attridge. The similarity to defamation is obvious. She suffered damages that are recognized as particularized and concrete and actual. Can this Court dismiss a case that satisfies these recent cases?

Background

1. In a few weeks this case will have been on file for three years. It is not new to the Court; it has decided a summary judgment motion. It is not new to the parties, they have answered, completed discovery, filed dispositive motions, and mediated.

2. In April 2020 and again in July 2020, Colonial admitted "this Court has subject matter jurisdiction of the claims in Plaintiff's Complaint." [Docket No. 6 ¶5 and 17 ¶7]. Yet, it moves for dismissal on these very pleadings:

Plaintiff, however, fails to plead an injury sufficient to provide her with Constitutional standing. Therefore, her suit should be dismissed for lack of standing.

Is Colonial's Attack Facial or Factual?

1. While Colonial claims to move under Rule 12(h)(3), its motion is better viewed through the lens of 12(b)(1). "Courts apply the standards developed under Rule 12(b)(1) to a motion filed under Rule 12(h)(3)." *Signal Hill Area All. v. Easy Mix Concrete Servs., LLC,* No. 1-21-CV-352-RP, 2021 U.S. Dist. LEXIS 257577, at *4 (W.D. Tex. 2021) citing *Wittner v. Schwartz*, No. 3:19-CV-3-DMB-JMV, 2020 U.S. Dist. LEXIS 28991, 2020 WL 853543, at *1 n.2 (N.D. Miss. Feb. 20, 2020); *Crockett v. United States*, No. SA-06-CA-0574-RF, 2007 U.S. Dist. LEXIS 105693, 2007 WL 9702681, at *1 (W.D. Tex. Dec. 4, 2007).

2. A 12(b)(1) motion to dismiss can be facial or factual. Under 5th Circuit law, a motion to dismiss with evidence attached is considered factual. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). In support of its motion, Colonial attaches the same evidence that this Court has already evaluated in ruling on Colonial's summary judgment. But, based on Colonial's statement that Plaintiff "fails to plead an injury" sufficient to invoke standing, Colonial appears to move on facial grounds.

*Facial Attack*

3. "Where, as here, the movant mounts a facial attack on jurisdiction based only on the allegations in the complaint, the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Communs., Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) [internal quotations omitted].

4. Presuming Attridge's allegations to be true, the Court found them sufficient to deny summary judgment. If Colonial's motion is a facial attack, then the inquiry should end here and Colonial's motion should be denied.

*Factual Attack*

5. Before the Court can consider Colonial's attack factual, it must determine that the evidence it submits in support is "relevant to the issue of subject matter jurisdiction." *Diaz v. Castro*, 122 F. Supp. 3d 603, 608 (S.D. Tex. 2014) (citing *Saraw P'ship v. United States*, 67 F.3d 567 (5th Cir. 1995)).

6. The affidavit and supporting exhibits discuss Colonial's actions, not whether Attridge suffered injury other any other component of subject matter jurisdiction. They are not relevant to an inquiry into subject matter jurisdiction. They must be disregarded and the motion should be examined under the facial attack analysis.

7. Should the Court find Colonial's evidence relevant to the issue of subject matter jurisdiction, it must then weigh it against the stipulated facts.

8. No matter what Colonial attaches to its motion, it is unable to controvert the factual stipulations. They have the ultimate weight:

> "Factual stipulations are binding and conclusive, and the facts stated are not subject to subsequent variation. So, the parties will not be permitted to deny the truth of the facts stated, or to maintain a contention contrary to the agreed statement, or to suggest, on appeal, that the facts were other than as stipulated or that any material fact was omitted."
>
> *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 677, 130 S. Ct. 2971, 2983 (2010) [internal punctuation omitted].

9. In preparation for trial, the parties made factual stipulations. *See* Docket No. 80. Plaintiff incorporates those stipulations by this reference. These stipulations establish that:

   a. Attridge never filed bankruptcy, ¶2;

   b. Colonial reported to one or more credit reporting agencies that she had filed a Chapter 7 bankruptcy petition, ¶9;

   c. Colonial's false reporting was included on a background check, ¶¶11-13;

   d. Attridge disputed Colonial's reporting, ¶15;

   e. Colonial performed an investigation, ¶¶16-20;

   f. Following Colonial's response to Attridge's dispute the bankruptcy discharge information remained on Ms. Attridge's credit report, ¶21;

   g. following this, a second dispute failed to correct the credit false reporting, ¶¶22-23;

  h. Then, when a second background check occurred, it included the inaccurate Chapter 7 bankruptcy discharge, ¶26-27; and

  i. Finally, a third dispute failed to correct the false bankruptcy information; ¶¶28-31.

10. Colonial's factual attack can be broken into two stages. First, whether there was a violation of the FCRA, and then whether that violation caused an injury.

### The Fair Credit Reporting Act

11. The Fair Credit Reporting Act requires a furnisher, like Colonial [Docket No. 80, ¶5], conduct an investigation in response to a dispute. *See* 15 U.S.C. § 1681s-2(b). If a furnisher finds the disputed information to be inaccurate it must i) modify the information; ii) delete that information; or iii) block the reporting of that information. *See* 15 U.S.C. § 1681s-2(b)(1)(E).

12. Per the stipulated facts, Colonial failed to modify, delete, or block its false bankruptcy reporting in response to Ann Attridge's disputes. Following these failures, Colonial furnished false information to TransUnion who disseminated it.

13. Colonial's stipulations establish each necessary element of a violation of the FCRA. However, as the Supreme Court has held, not every violation of the law amounts to a concrete injury.

### Concrete Injury

14. Judge Fitzwater explained the issue well:

> "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (*quoting Defs. of Wildlife*, 504 U.S. at 560). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* at 340. Thus, while an injury need not be tangible, it cannot be merely abstract or hypothetical. *Id.* at 339-41; *TransUnion LLC*, 141 S. Ct. at 2204. "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 578 U.S. at 342. "But deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009); *see also Spokeo*, 578 U.S. at 341 ("[Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").
>
> *Vazzano v. Receivable Mgmt. Servs., LLC*, Civil Action No. 3:21-CV-0825-D, 2022 U.S. Dist. LEXIS 144258, at *7-8 (N.D. Tex. 2022).

15. For Attridge to have suffered a "concrete harm" she must be able to identify a harm with a close historical or common-law analog. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). The most obvious injuries are physical and monetary harms. *Id*. Article III also recognizes intangible harms including "reputational harms." *Id*.

16. *TransUnion* involved a class action with over 8,000 members. Each of whose credit **file** indicated they were on the terrorist watchlist (the OFAC list.) Of these, 1,853

had this information published to third parties in the form of a credit **report**[1] containing an indication they were on the OFAC list. The Supreme Court explained that these 1,853 were proper class members with the following reasoning:

> "Start with the 1,853 class members (including the named plaintiff Ramirez) whose reports were disseminated to third-party businesses. The plaintiffs argue that the publication to a third party of a credit report bearing a misleading OFAC alert injures the subject of the report. The plaintiffs contend that this injury bears a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—namely, the reputational harm associated with the tort of defamation. *Spokeo, Inc. v. Robins*, 578 U. S. 330, 341, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)."
>
> …
>
> In looking to whether a plaintiff's asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate.
>
> …
>
> In short, the 1,853 class members whose **reports were disseminated to third parties** suffered a concrete injury in fact under Article III."
>
> *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208-09 (2021). [emphasis added]

---

[1] A consumer's credit file is maintained at a credit bureau, it stays there and does not get published or reported. A credit report is the information in a credit file that a bureau determines the law and industry standards all it to disseminate to third parties.

17. Per the stipulations, Colonial's false reporting was disseminated to third parties, not merely part of a credit file. Attridge's injury bears a close relationship to the tort of defamation, and she suffered damages in the form of emotional distress and of out-of-pocket costs. Supreme Court case law supports the fact that she has suffered a concrete injury-in-fact under Article III.

18. In footnote 7 of *TransUnion*, the Supreme Court mentioned the possibility that merely knowing you were at risk for reputational harm could suffice for Article III standing. Here, there is more than risk there is actually dissemination of false, defamatory information, to third parties. Colonial admits it was false, that it provided to the credit bureaus, and that it was published on more than one credit report.

*Perez*

19. Colonial seeks refuge in the recent *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816 (5th Cir. 2022) case from the 5th Circuit. *Perez* is an FDCPA case where Ms. Perez received a collection letter on a time barred debt. The 5th Circuit found that Ms. Perez did not suffer any actual damages under five different approaches.

20. First, it looked to whether *Perez's* claim that a violation of her statutory right amounts to a concrete injury. It referred to Spokeo in finding that being deprived of a procedural right did not, for Perez, amount to a concrete injury. As established

above, because Colonial's false information was disseminated to third parties, its violation of Attridge's statutory right amounts to a concrete injury.

21. Second, *Perez* looked to whether a material risk of harm can qualify as a concrete injury. This Court is not presented with this issue, unlike Ms. Perez, who was exposed to the possibility of paying a time barred debt, Ms. Attridge was actually defamed by Colonial. False information concerning her was published.

22. Third, *Perez* found that "confusion" was not a harm analogous to any recognized common-law analog. Here, the harm is analogous to a well-recognized common-law harm—defamation a/k/a harm to one's reputation. A recovery permitted under the FCRA. *Bacharach v. Suntrust Mortg.*, 827 F.3d 432, 435-36 (5th Cir. 2016).

23. Fourth, *Perez* looks to a loss of time as a compensable harm. Colonial latches on to this and adds an argument about "nominal" expenses. The *Perez* Court does not foreclose lost time as a basis for recovery and neither should this Court. The case Colonial cites here concerning "nominal expenses" is *Uzuegbunam*, discussed more fully below.

24. Fifth, and finally, the *Perez* Court looks at whether the receipt of one unwanted letter is sufficient to cause concrete injury. The *Perez* Court looks to *Ramirez* in its analysis for the limits of a concrete injury. Per the parties stipulations, Colonial failed over and over to remove the false reporting after it was published to third parties. As set out above *Ramirez* supports Attridge's claim.

*Nominal Expenses*

25. Colonial appears to misunderstand *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) by stating that that nominal expenses are insufficient to establish standing. The phrase "nominal expenses" does not appear in *Uzuegbunam* it only refers to "nominal damages."

    > "Because nominal damages were available at common law in analogous circumstances, we conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right."

    *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801-02 (2021).

26. Nominal damages are a creature of judicial systems that do not provide for declaratory relief. "[H]ere is no dispute that nominal damages historically could provide prospective relief, because such awards allowed plaintiffs at common law to obtain a form of declaratory relief in a legal system with no general declaratory judgment act." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 805 (2021) [internal quotation omitted].

27. Here, Colonial refers to Attridge's out-of-pocket expenses as nominal. However, this Court, in denying summary judgment, found that Attridge presented sufficient evidence of her out-of-pocket costs to preclude summary judgment. [Docket No. 51].

*Mental Anguish and Emotional Distress Damages*

28. First, the 5th Circuit has recognized that mental anguish and emotional distress are sufficient to establish standing:

    "Indeed, the number of causes of action in which a person may recover for emotional harm—from many common law claims including, most obviously, intentional inflection of emotional distress to section 1983 claims that rely on common law remedies—supports the notion that emotional harm satisfies the "injury in fact" requirement of constitutional standing."

    *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 168-69 (5th Cir. 2016).

29. Plaintiff incorporates, by this reference, her exhibits to her motion for summary judgment [Docket No. 40]. While mental anguish claims do not need to be corroborated, Attridge not only testifies to her mental anguish [Docket No. 40-1], but offers the corroborating testimony of her sister [Docket No. 40-15], brother [Docket No. 40-16], and husband [Docket No. 40-17]. *Smith v. Lowe's Home Ctrs., Inc.*, No. SA-03-CA-1118-XR, 2005 U.S. Dist. LEXIS 12812, 17 (W.D. Tex. 2005).

30. The Court, in its summary judgment order, found this evidence sufficient to present a genuine issue of material fact to be presented to a jury. This evidence is sufficient to show that she was harmed. Under Perez, Attridge does not have to show any degree of harm:

    "So a plaintiff doesn't need to demonstrate that the level of harm he has suffered would be actionable under a similar, common-law cause of action.

But he does need to show that the type of harm he's suffered is similar in kind to a type of harm that the common law has recognized as actionable." *Perez* at 822.

## Already Implicitly Denied

31. Standing is one component of subject matter jurisdiction. *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). Per Rule 12(h)(3) if a court determines at any time that it lacks subject-matter jurisdiction, it must dismiss the action. Colonial does not include any new evidence in its motion. The same affidavit that supported its motion for summary judgment supports this motion. The Court's order on Colonial's summary judgment shows it thoroughly evaluated both Colonial's evidence and that of Ms. Attridge. The Court had more evidence in front of it at that time, including two of Colonial's expert reports. If the Court believed at that time that Plaintiff lacked subject-matter jurisdiction, it was required then to dismiss this case. It did not, so it stands that the Court has made its determination of its subject-matter jurisdiction.

## Final Thoughts

32. Forty years ago the late Justice Scalia analogized standing to the "very first question that is sometimes rudely asked when one person complains about another" "What it to you?"[2] Here, the question is "What's your reputation to

---

[2] Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)

you?" Its an easy answer. Attridge does not present the Court with some violation of the law divorced from any concrete harm.[3] Whether or not a person works at a bank with others's sensitive financial information, nobody's reputation should be tarnished by being reported as having filed bankruptcy when they have not.

33. Finally, if the Court finds it is without standing, then per footnote 9 of *TransUnion*, Colonial may find itself holding a pyrrhic victory.

---

[3] An example of this provided by the Supreme Court is the dissemination of an incorrect zip code. *Spokeo* at 342.

Conclusion

34. Far from "complaining about one credit reporting" Attridge is complaining about a Kafkaesque nightmare where Colonial pointed its finger at Transunion while repeatedly verifying a bankruptcy—it knew was false—as accurate.

35. Attridge has suffered a violation of a legally protected interest that is concrete and particularized and actual. Her harm is not conjectural or hypothetical. Because it is real and not some legal violation divorced from a recognized harm, the Court must deny Colonial's motion.

Dated: January 13, 2023                     Respectfully Submitted,


/s/ *William M. Clanton*
William M. Clanton
Texas Bar No. 24049436

Law Office of Bill Clanton, P.C.
926 Chulie Dr.
San Antonio, Texas 78216
Phone: 210 226 0800
Fax: 210 338 8660
bill@clantonlawoffice.com