FILED
September 29, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANN MARIE ATTRIDGE, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL NO. SA-20-CV-00205-OLG |
| COLONIAL SAVINGS F.A., | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendant's Motion to Dismiss for Lack of Standing. (*See* Dkt. No. 89.) This is a Fair Credit Reporting Act (FCRA) case in which Plaintiff Ann Attridge's remaining cause of action against Defendant Colonial Savings F.A. (Colonial) is for negligently failing to conduct a reasonable investigation in response to her credit dispute in violation of 15 U.S.C. § 1681s-2(b).[1] (Pl.'s Am. Compl. at 6–8, Dkt. No. 14.) Attridge has responded to the motion to dismiss (Dkt. No. 92), Colonial has replied (Dkt. No. 93), and Attridge has submitted a sur-reply (Dkt. No. 95). For the reasons set out below, the Court will grant Colonial's motion and dismiss Attridge's claim for lack of subject-matter jurisdiction.

## BACKGROUND

Ann Attridge is a mortgage loan officer and has never filed for bankruptcy. However, in 2014, Colonial informed Attridge that they could not accept her online mortgage payments because her account indicated that she had filed for bankruptcy. (Am. Compl. at ¶ 17.) Attridge declared to Colonial that she never filed for bankruptcy, and Colonial acknowledged the error. (*Id.* at 18.)

---

[1] Attridge initiated this lawsuit by filing her Original Complaint against Colonial Savings F.A. and TransUnion, LLC (*see generally* Pl.'s Orig. Compl., Dkt. No.1); the latter has since settled and has been dismissed from this action (*see* Dkt. No. 37). At summary judgment, the Court dismissed Attridge's claim against Colonial for willful violation of the statute. (*See* Order, Dkt. No. 51.)

Attridge believed the mistake had been fixed since Colonial thereafter began accepting her online mortgage payments. (*Id.* at ¶ 19.) In April 2019, Attridge again became aware of the incorrect bankruptcy notice on her account after undergoing a background check for new employment. (*Id.* at ¶ 20–21.) In an attempt to rectify the incorrect reporting, Attridge disputed the bankruptcy reporting with Colonial and HireRight, LLC, a third-party background service employed by Attridge's prospective employer. (*Id.*)

On May 2, 2019, Attridge received a letter from Colonial stating that "TransUnion has inadvertently reported your loan as having a bankruptcy status." (*Id.* at ¶ 22.) On May 20, 2019, HireRight sent a letter to Attridge claiming that TransUnion had verified the reporting as accurate. (*Id.* at ¶ 24.) Thereafter, Attridge submitted a dispute concerning the bankruptcy reporting through TransUnion's online dispute portal. (*Id.* at ¶ 26.) On June 15, 2019, TransUnion responded to Attridge's dispute stating, "[TransUnion] investigated the information you disputed and the disputed information was **VERIFIED AS ACCURATE** . . ." (*Id.* at ¶ 27) (alteration and emphasis in original). In October 2019, Attridge again disputed the reporting and on October 16, 2019, received a letter from TransUnion stating that the reporting had been verified as accurate by Colonial. (*Id.* at ¶ 31–32.)

As a result of the bankruptcy reporting, Attridge claims that she "continues to deal with highly negative, inaccurate credit reporting" and "has, on several occasions, engaged in an exercise of frustration." (*Id.* at ¶¶ 33–34.) Additionally, "Attridge has experienced a high degree of stress as a result of this false reporting" (*id.* at ¶ 35), and "continues to suffer damages, including damage to her reputation, stress, fear, worry, distress, frustration, humiliation, and embarrassment" (*id.* at

¶ 40). Attridge additionally raised, at summary judgment, out-of-pocket costs—i.e., time spent and office supplies purchased in connection with disputing her credit report.[2] (*See* Dkt. No. 40 at ¶ 37.)

Colonial now seeks to dismiss this action without prejudice, arguing that the Court lacks constitutional authority to adjudicate Attridge's claim under the FCRA because the Amended Complaint "fails to plead an injury sufficient to provide her with [Article III] standing" under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). (D.'s Mot. to Dismiss, Dkt. No. 89, at 1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge the court's subject-matter jurisdiction as a defense. A motion to dismiss under Rule 12(b)(1) may mount either a facial or a factual attack on the existence of subject-matter jurisdiction. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, and the allegations in [her] complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980); *see Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981) (A facial attack occurs when a defendant "merely files a Rule 12(b)(1) motion" without accompanying evidence.) "A 'factual attack,' however, challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

The Court "may dispose of a motion to dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the

---

[2]The Court notes that, in ruling on Colonial's motion for summary judgment on December 28, 2021, the Court twice expressly stated that the pleadings may be amended, if necessary, to conform to the summary judgment evidence. (Order, Dkt. No. 51 at 6, 14.) Attridge never sought leave to amend her complaint.

complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). "[A] claim is properly dismissed for lack of subject matter jurisdiction when a court lacks statutory or constitutional authority to adjudicate the claim." *Sanchez v. Bexar Cnty. Sheriff's Office*, 2021 WL 3598286, at *2 (W.D. Tex. Mar. 30, 2021) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Defects in the Court's subject-matter jurisdiction can be raised by a party at any time, and, if the issue of subject-matter jurisdiction is not raised by a defendant, the Court has a duty to raise it sua sponte. *See* FED. R. CIV. P. 12(h)(3).

## DISCUSSION

### I. The FCRA

In enacting the FCRA, which deals largely with credit reporting agencies, Congress's express purpose was to:

> require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b). "To achieve [its] goals, the [FCRA] regulates the consumer reporting agencies that compile and disseminate personal information about consumers." *TransUnion*, 141 S. Ct. at 2200. In regard to those, like Colonial, who furnish information to credit reporting agencies, the FCRA imposes several duties that only arise upon the furnisher's receipt of notice of a consumer dispute from a credit reporting agency. *Id.* § 1681s-2(b)(1); *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) ("Such notice is necessary to trigger the furnisher's duties under Section 1681s-2(b)."). Those duties require the furnisher of information

to (1) conduct an investigation; (2) review all relevant information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; (4) if the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information; and (5) if the information is inaccurate or incomplete, (i) modify, (ii) delete, or (iii) permanently block the information. *Id.* § 1681s-2(b)(1)(A)–(E).

The FCRA imposes civil liability on "any person" who willfully or negligently fails to comply with its requirements. *Id.* §§ 1681n, 1681o; *see Young*, 294 F.3d at 639 ("The plain language of the FCRA appears to impose civil liability on "any person" violating a[n] FCRA duty unless some exception applies."). If a plaintiff establishes a willful violation, she can recover actual damages or statutory damages, as well as punitive damages and attorney's fees. *TransUnion*, 141 S. Ct. at 2201 (citing 15 U.S.C. § 1681n(a)). If a plaintiff establishes a negligent violation, she can recover actual damages and attorney's fees. 15 U.S.C. § 1681o(a). While the Fifth Circuit has avoided expressly determining whether a private cause of action exists against a furnisher of information for negligently failing to comply with § 1681s-2(b), *see Young*, 294 F.3d at 639, numerous courts in this circuit have concluded that it does.[3]

---

[3]*See, e.g., Ostiguy v. Equifax Info. Services, LLC*, No. 5:16-CV-790-DAE, 2017 WL 1842947, at *5 (W.D. Tex. May 4, 2017), *aff'd sub nom. Ostiguy v. Equifax Info. Services, L.L.C.*, 738 Fed. Appx. 281 (5th Cir. 2018) ("To maintain a private right of action against a furnisher under section 1681s-2(b), a plaintiff must demonstrate: '(1) [he] notified a consumer reporting agency of inaccurate information; (2) the consumer reporting agency notified [the furnisher] of the dispute; (3) [the furnisher] failed to conduct an investigation, correct any inaccuracies[,] and failed to notify the consumer reporting agency of the results of the investigation.'") (quoting *Smith v. Nat'l City Mortg.*, No. A-09-CV-881 LY, 2010 WL 3338537 (W.D. Tex. Aug. 23, 2010), *report and recommendation adopted*, No. A-09-CV-881-LY, 2010 WL 11652114 (W.D. Tex. Sept. 20, 2010)); *Parker v. Key Bank, N.A.*, No. A-07-CA-338-SS, 2008 WL 11416929, at *3 (W.D. Tex. Feb. 12, 2008) (collecting cases).

5

## II. Article III Standing

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion*, 141 S. Ct. at 2203. For a court to have subject-matter jurisdiction over a particular claim, the plaintiff must have standing to assert that claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish standing, the plaintiff, as the party invoking federal jurisdiction, must carry her burden to show—"with the manner and degree of evidence required at the successive stages of the litigation"—each of the following: (1) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that there is a fairly traceable connection between her injury and the defendant's alleged conduct; and (3) that the injury would likely be redressed by judicial relief. *Lujan*, 504 U.S. at 560–6; *TransUnion*, 141 S. Ct. at 2203.

Only the first element of standing is at issue. Colonial argues that Attridge's alleged injuries are insufficiently concrete to confer Article III standing, noting that Attridge suffered no financial injury or decreased credit score and was not denied any applications for credit or employment. (Mot. at 5, 6.) "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("A 'concrete' injury must be '*de facto*'; that is, it must actually exist."). In determining whether the concrete-harm requirement is satisfied, the Court assesses "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (citing *Spokeo*, 578 U.S. at 341). And although this requires Attridge to point to a "close historical or common-law analogue" for her alleged injuries, she is not required to identify an "exact duplicate in American history and tradition." *Id.* (cautioning,

however, that "*Spokeo* is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal court").

As noted above, Attridge pleads the following harms: "damages, including damage to her reputation, stress, fear, worry, distress, frustration, humiliation, and embarrassment." (*Id.* at ¶ 40.) In its motion to dismiss, Colonial contends that Attridge's alleged injuries—(a) reputational harm, (b) emotional distress, and (c) loss of time and out-of-pocket expenses—are not concrete because Attridge's pleadings fail to articulate a recognized, particular instance of harm. (*See* Mot. at 7–10.) Attridge responds that the reputational harm she experienced "bears a close relationship to the tort of defamation, and she suffered *damages* in the form of emotional distress and out-of-pocket costs." (Pl.'s Resp. at ¶ 17) (emphasis added)). Each is addressed in turn.

***Reputational harm***. Concrete intangible harms with a close relationship to harms traditionally recognized at common law include "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 141 S. Ct. at 2204. Relying on *TransUnion*, Attridge argues that Colonial's publication of the incorrect bankruptcy reporting to third parties is analogous to the tort of defamation and, thus, constitutes a concrete injury-in-fact. (Resp. at 8.)

In *TransUnion*, the Supreme Court assessed whether class members—in a suit against a credit reporting agency under § 1681n(a) for willful violation of § 1681e(b) of the FCRA— suffered a concrete harm sufficient under Article III after TransUnion gratuitously, and erroneously, flagged their credit reports with "terrorist" or "potential terrorist" based solely on their first and last names' matching those of individuals on a list maintained by the U.S. Treasury Department's Office of Foreign Assets Control. *See generally TransUnion*, 141 S. Ct. at 2200–02. ("OFAC maintains a list of 'specially designated nationals' who threaten America's national

security . . . [and] [i]t is generally unlawful to transact business with any person on the list.") (citing 31 C.F.R. pt. 501, App. A (2020)). The Court held that only those class members whose credit reports were disseminated by TransUnion to third parties suffered a concrete harm, finding that "the harm from a misleading statement of th[at] kind b[ore] a sufficiently close relationship to the [reputational] harm from a false and defamatory statement." *Id.* at 2208–09. ("Under longstanding American law, a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party.") (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990)).

Here, Attridge's reliance on the fact that her credit report was disseminated by TransUnion is necessary but not sufficient to establish a concrete injury. To show that she suffered a concrete injury similar in kind to the reputational harm associated with the common-law tort of defamation, Attridge must demonstrate how the dissemination of erroneous information caused harm to her reputation. *Cf. Spokeo*, 578 U.S. at 342 ("[N]ot all inaccuracies cause harm or present any material risk of harm."). Colonial challenges that Attridge, "for all of her allegations of a concern about what might happen, suffered no harm and thus has no injury." (Mot. at 8.) The Court must agree.

Attridge has neither alleged nor shown any instances of credit denial, a decreased credit score, or lost credit opportunities as a result of Colonial's alleged failure to conduct a reasonable investigation. (*See* Compl., ¶¶ 40, 46, 51, 57); *see Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022) ("Remember: A plaintiff always must be able to point to a concrete injury to bring suit . . . [a]nd if a risk hasn't materialized, the plaintiff hasn't yet been harmed."). Indeed, it is difficult to conceive how Attridge can meet her burden to show reputational harm when both her pleadings indicate and her own summary judgment evidence establishes that

she, fortunately, remained financially unscathed by the false bankruptcy reporting.[4] *See Inclusive Cmties. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (reiterating that at the summary judgment stage, plaintiff cannot rely on "mere allegations" but, rather, must set forth by affidavit or other evidence, "specific facts" supporting standing) (quoting *Lujan*, 504 U.S. at 561). Accordingly, because Attridge has neither plausibly alleged nor specifically demonstrated reputational harm resulting from Colonial's alleged violation of the FCRA, she has not met her burden of establishing that she has suffered a concrete harm as required under Article III.

***Emotional distress.*** In *Perez*, the Fifth Circuit announced that emotional distress could suffice to confer standing. *Perez*, 45 F.4th at 824 (examining standing for claim under section of FDCPA prohibiting the use of false or misleading representations by debt collectors) (citing *TransUnion*, 141 S. Ct. at 2210–11). However, that statement was dicta, and *TransUnion* expressly took "no position on whether or how such an emotional or psychological harm could suffice for Article III purposes." 141 S. Ct. at 2211 n. 7 (supposing, "for example, by analogy to the tort of intentional infliction of emotional distress"). This much is certain: for an intangible, emotional harm to satisfy Article III's concrete-harm requirement, it must bear a sufficiently "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts—and the plaintiff bears the burden of demonstrating "a close historical or common-law analogue for their asserted injury." *TransUnion, LLC*, 141 S. Ct. at 2197.

---

[4]Attridge's declaration in the summary judgment record establishes that while the false bankruptcy was appearing on her credit report, she applied for a job with a financial institution, knowing that her potential employer would request her credit report and see the erroneous bankruptcy discharge; that she was nevertheless offered the position with the financial institution; that she then applied to refinance her mortgage with her new financial institution employer; that the false bankruptcy discharge still appeared on her credit report and was seen by her senior loan officer and other co-workers—who were "made privy to the details of the erro[neous bankruptcy information]"; and that she ultimately received final approval on her application for the loan. (Dkt. No. 40-1 at ¶¶ 5, 17–18, 22–23.)

The Court notes at the outset that Attridge failed to carry her burden by analogizing, in her response, her alleged emotional distress to a comparable common-law harm. That failure, alone, is enough for the Court to conclude that Attridge's assertion of emotional distress does not give her standing to pursue her claim against Colonial. *See Perez*, 45 F.4th at 825 ("It is not [the Court's] job to 'conjure up possible theories' that could carry a litigant's burden.") (quoting *Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011)). Her response merely identifies reputational harm as her concrete harm and the emotional distress, for which she pleaded, and her out-of-pocket costs, for which she did not, as her resulting damages. (Resp. at ¶ 17.)

But even assuming she had presented intentional infliction of emotional distress as a proper comparator here,[5] under *Perez*, the Court would look to whether "the harms elevated by Congress" in § 1681s-2(b) are "harms analogous to th[at] tort." *Perez*, 45 F.4th at 826. And they are not. Congress's concern in imposing duties on furnishers of information upon notice of a dispute from a credit reporting agency was not to protect consumers from emotional distress. Rather, it was fair and accurate credit reporting—or, in other words, to protect the banking system from unfair and inaccurate credit reporting. *See* 15 U.S.C. § 1681a(a) (finding that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the [banking system's] continued functioning").

Congress also expressed concern about "respect for the consumer's right to privacy." *Id.* But it did not address that concern through § 1681s-2(b); "it addressed those problems

---

[5]The Court notes that Attridge's response makes a passing reference to emotional distress in the standing context, citing a pre-*TransUnion* Fifth Circuit case that mentions the common-law tort of intentional infliction of emotional distress. (Resp. at ¶ 28) (citing *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 168–69 (5th Cir. 2016)). But nowhere does she affirmatively articulate or present an argument for the application of a common-law analogue for her asserted emotional harms.

through . . . *different* section[s] of the [FCRA]. *Perez*, 45 F.4th at 826 (comparing 15 U.S.C. §§ 1692d, e and rejecting analogy to common-law tort of intrusion upon seclusion by plaintiff claiming harm of invasion of privacy in suit against a debt collector based on section of FDCPA that prohibited "false, deceptive, or misleading representation[s]" because Congress addressed privacy-related concerns through separate section of FDCPA prohibiting harassment or abuse) (emphasis in original); *see, e.g.*, *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 873 (W.D. Tex. 2016) (approving analogy to common-law tort of intrusion upon seclusion by consumers claiming privacy-related harm in suit against credit reporting agency based on §§ 1681b and 1681e of the FCRA for providing their credit reports to state comptroller). However, Attridge has not sued Colonial based on those provisions—nor, for that matter, has she asserted a privacy-related harm.

Accordingly, the tort of intentional infliction of emotional distress cannot be used "to bootstrap standing" where, as here, a plaintiff sues a defendant for violating a statutory provision—which prescribes a duty owed to a third party—and does not involve emotional distress. *Perez*, 45 F.4th at 826 & n.7.

***Out-of-pocket expenses.*** Attridge neither pleaded for her out-of-pocket expenses in her complaint nor argues in her response[6] that she was concretely harmed as result of those expenses. Nor is it clear that an out-of-pocket expense voluntarily incurred to remedy an alleged violation could itself satisfy the concrete-harm requirement of standing under Article III. But the Court need not address this question because, as noted above, Attridge does not plead for out-of-pocket

---

[6]In her response, Attridge focuses on Colonial's characterization of her out-of-pocket expenses as nominal damages. (*See* Resp. at ¶¶ 25–27.) The Court agrees with Attridge (*see id.* at ¶¶ 25–27) that Colonial's motion appears to misunderstand the holding in *Uzuegbunam v. Preczewski*, but that case merely held that a pleaded request for nominal damages satisfies the *redressability* element necessary for standing where a plaintiff's claim is based on a completed violation of a constitutional right. *See* 141 S. Ct. 792, 801–02 (2021).

11

expenses as damages in her operative complaint, and, therefore, the Court need not entertain—and Attridge does not present—any argument in support of Article III standing based upon her out-of-pocket-expenses. *See Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021); *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246, 1248 (7th Cir. 2021) ("Our job is to decide whether [plaintiffs] have Article III standing to pursue the case they have presented in their complaint.").

## CONCLUSION AND ORDER

Accordingly, for the foregoing reasons, the Court finds that Attridge failed to carry her burden of establishing that she has standing to prosecute the claim she asserts against Colonial for its alleged violation of the duties it owed to TransUnion, LLC under 15 U.S.C. § 1681s-2(b) based on the harms asserted in her operative complaint.

It is therefore **ORDERED** that Defendant's Motion to Dismiss for Lack of Standing (Dkt. No. 89) is **GRANTED** and Plaintiff's claim in the Amended Complaint is **DISMISSED** for lack of subject-matter jurisdiction.

This case is **CLOSED**.

It is so **ORDERED**.

**SIGNED** this _____ day of September, 2023.

_____
ORLANDO L. GARCIA
United States District Judge