FILED
September 30, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
       DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANN MARIE ATTRIDGE, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL NO. SA-20-CV-00205-OLG |
| COLONIAL SAVINGS F.A., | § | |
| Defendant. | § | |

# ORDER

Before the Court is Plaintiff Ann Attridge's Motion to Reconsider Dkt. No. 99 Order Dismissing Case for Lack of Subject Matter Jurisdiction and Memorandum in Support. (Dkt. No. 101.) Defendant Colonial Savings F.A. (Colonial) has responded (*see* Dkt. No. 103), and Attridge has replied (*see* Dkt. No. 104). The Motion will be denied for the following reasons.

## I.  Legal Standard

Rule 59(e) provides that motions "to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). Such requests enable a district court "to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (stating that Rule 59(e) serves a "corrective function").

Relief under Rule 59(e) may issue only if the movant clearly establishes a manifest error of law or fact or presents newly discovered evidence. *Def. Distributed v. U.S. Dep't. of State*, 947 F.3d 870, 873 (5th Cir. 2020); *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019). The only ground alleged in this case is "manifest error of law." (*See* Dkt. No. 101 at 1–2.) To find such error, the error must be "plain and indisputable" and one "that amounts to a complete disregard of the controlling law." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017), *cert. denied*, 583 U.S. 1121 (2018).

A Rule 59(e) motion cannot be used to raise arguments which could have been made before the judgment or decision issued. *Banister*, 590 U.S. at 508; *In re Life Partners Holdings*, 926 F.3d at 128. Nor is it the proper vehicle for rehashing evidence, legal theories, or arguments that have already been resolved. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (noting that Rule 59(e) cannot be used to "relitigate old matters") (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)); *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). District courts have "considerable discretion" in deciding whether to reopen a case in response to a Rule 59(e) motion. *Templet*, 367 F.3d at 479. In considering such a request, however, the Court's task is to strike the proper balance between two competing interests: "the need to bring litigation to an end" and "the need to render just decisions on the basis of all the facts." *Id.* Altering a judgment or decision under Rule 59(e) "is an extraordinary remedy that should be granted sparingly." *Matthews v. Tidewater, Inc.*, 108 F.4th 361 (5th Cir. 2024).

## II.  Discussion

In the Motion, Attridge contends, but fails to demonstrate, that the Court "misread and misapplied" two controlling cases—*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) and *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022).

In *TransUnion* the Supreme Court acknowledged that although "the mere risk of future harm, standing alone, cannot qualify as a concrete harm," the exposure to the risk of future harm could cause "a *separate* concrete harm." *TransUnion LLC*, 594 U.S. at 436; *but see id.* at 436 n.7. That statement was immediately qualified as follows:

> For example, a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm. **We take no position on whether or how such** an emotional or psychological **harm could suffice** for Article III purposes—**for example, by analogy** to the tort of intentional infliction of emotional distress.

2

*Id.* 436 n.7 (emphasis added). Because Attridge's sole harms in this case are emotional injuries resulting from Colonial's alleged negligent "false credit reporting" (Dkt. No. 101 at 3)—or, in other words, emotional injuries caused by being exposed to a risk of future monetary or reputational harm—the above qualification from *TransUnion* is directly on point. To state it differently, the Supreme Court expressly took "no position on whether or how" the emotional harms resulting from "[Attridge]'s knowledge that . . . she [was] exposed to a risk of future physical, monetary, or reputational harm . . . could suffice for Article III purposes." *Id.*

*TransUnion*'s very next paragraph considers an example, wherein a woman driving home from work encounters "a reckless driver who is dangerously swerving across lanes" and, thereby, "expos[ing] the woman to a risk of future harm." *Id.* at 436. In one scenario, "the risk does not materialize[,] and the woman makes it home safely." *Id.* at 436–37. That outcome *"would ordinarily be cause for celebration, not a lawsuit."* *Id.* at 437. (emphasis added). But in a second scenario, where "the reckless driver crashes into the woman's car, *the situation would be different*, and (assuming a cause of action) the woman could sue the driver for damages." *Id.* (emphasis added). This case is analogous to the first scenario, as Attridge's suit is based on her emotional injuries caused by her exposure to a risk of future monetary or reputational harm which never, in fact, materialized.

The Court does not read *TransUnion* to suggest that the woman in the first scenario would have standing to sue the reckless driver so long as she experienced stress, fear, worry, distress, or frustration as a result of being exposed to a risk of harm that, ultimately, did not materialize. By extension, the Court cannot read *TransUnion* to require a finding that Attridge suffered a concrete injury—and, therefore, has standing to sue Colonial—because she felt "already-materialized" emotional distress due to her exposure to a risk of harm. (*See* Dkt. No. 101 at 2–3.)

3

Finally, despite taking "no position" on the matter, the Supreme Court clearly held that any effort to stand on that leg alone would require a common law comparator. *See id.* at 463 n.7; *see Spokeo v. Robins*, 578 U.S. 330, 341 (2016) (holding that courts should assess whether the alleged injury to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts). The Fifth Circuit in *Perez* plainly recognized this:

> So *TransUnion* is clear: A plaintiff always needs a concrete injury to bring suit, and injuries are concrete only if they bear a "close relationship" to injuries that courts have traditionally recognized as concrete.

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022). As the Court stated in the underlying Order, Attridge made no attempt to analogize her emotional distress to a comparable common-law harm. (*See* Order, Dkt. No. 99 at 10.)

The Motion mistakenly relies on the following sentence from *Perez* to compel a different result: "A plaintiff can sue for damages if the risk . . . causes a separate injury-in-fact, such as emotional distress." *Perez*, 45 F.4th at 824 (**citing *TransUnion LLC*,** 141 S. Ct. 2190, 2210–11). This reliance is misplaced. First, as the plaintiff in that case had not asserted an emotional injury, let alone one caused by a risk of future harm, this issue was neither before the Fifth Circuit nor decided by it in *Perez*. Second, Attridge overlooks that the Fifth Circuit's entire opinion, in its application of *TransUnion*, analyzes five different types of harm *by analogy to comparable common-law harms*. Critically, and in stark contrast with the rest of the opinion, *Perez* undertakes no analysis of emotional harm and its potentially applicable common-law analogues, because, again, that type of harm had not been asserted and was therefore not at issue. *See generally id.* (holding that plaintiff had not established concrete injury for standing purposes after conducting close-relationship analysis for each asserted harm—*i.e.*, (1) statutory violation of FDCPA, (2) risk of financial harm, (3) confusion, (4) wasted time, and (5) receipt of unwanted letter). As such, *Perez*'s passing mention of emotional distress cannot be understood—consistent with *TransUnion*

4

and *Spokeo*—to relieve Attridge of establishing the concreteness of her intangible harms by demonstrating that it sufficiently resembles a traditionally recognized emotion-based harm. *See generally TransUnion LLC*, 594 U.S. 413 (holding that intangible harms can be concrete for standing purposes provided that they are sufficiently related to traditional harms historically recognized at common law).[1]

Based on the foregoing, Attridge has not established that dismissal of her amended complaint for lack of standing was manifestly erroneous under controlling precedent. Accordingly, the Motion to Reconsider (Dkt. No. 101) is **DENIED**.

Each party shall bear their own costs.

It is so **ORDERED**.

**SIGNED** this 30th day of September, 2024.

ORLANDO L. GARCIA
United States District Judge

---

[1] Though the issue was not before the Court, since Attridge did not argue intentional infliction of emotional distress or any other common-law analogue, it is unlikely that the harm from being exposed to a risk of monetary or financial harm bears a close relationship to the harm from intentional or reckless extreme and outrageous conduct. *See, e.g., TransUnion LLC*, 594 U.S. at 433 (finding the "harm from being labeled a 'potential terrorist' bears . . . a sufficiently close relationship to the harm from a false and defamatory statement"); *Cf. Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (finding widows' alleged emotional distress supported standing under FDCPA where defendant law firm intentionally sent intimidating, threatening, and misleading dunning letters attempting to collect alleged overpayments of federal funds for disaster-relief grants after their homes were devastated by Hurricane Katrina).